Daniel, J.
 

 This is an action of replevin (under the act of assembly, Rev. Stat. ch. 101) to recover a slave named Lindsey, and damages for his detention. The defendant avowed that he had title. The said slave had belonged to Elizabeth Lanier for her life, remainder to her son Andrew J. Lanier. The plaintiff was a constable, and had in his hands several justices executions, to an amount exceeding the value of the slave; some of them against Elizabeth Lanier and Andrew J.
 
 *193
 
 Lanier, and some against A. J. Lanier alone. By virtue of these executions, he, on the 11th day of May, 1842, levied on the slave Lindsey, and took him into his actual possession, and kept him there until the day of sale, (27th June, 1842,) when the defendant seized him and carried him away from the plaintiff’s possession. The defendant was also a constable, and had in his hands, justices’ executions against the very same defendants, (E. L. and A. L L.) under which executions, he, on the 15th of April, 1842, had levied on the said slave Lindsey; but he did not rémüve him, but left him in the possession of the defendants in those executions. Andrew J. Lanier, who owned the remainder in the slave, on the 1st day of March, 1842, executed a deed to one King for the slave and a tract of land, in trust to Secure ohe Reed, a debt for $700 : Reed, on the 24th day of May, 1842, assigned all his interest in the deed in trust to Hill and Lomax, two creditors of the Laniers, in consideration they woúld pay him his debt. In September, 1842, King sold the land mentioned in the deed in trust, and out of the purchase money hé satisfied all the debts covered by the deed in trust Elizabeth Lanier, the tenant for life of the slave, died pending this action.
 

 The judge was of opinion,
 
 first,
 
 that the levies made by the plaintiff, under the execution in his hands, had priority to those levies made by the defendant under the executions in his hands, although they in fact were first made, because, the property levied on by the defendant, was left by him, in the possession of the debtors in the said executions.
 

 Secondly,
 
 the judge thought that the plaintiff, by force of the said executions in his hands, and the levies under them, obtained only the title or special property in the slave, which the tenant for life had, as at the time of the levy, the remainder man had neither a legal or equitable interest in the slave, subject to the said executions. The deed to King carried the legal estate in remainder, and it was dated before the levies were made by the plaintiff. And the fact of the trusts in the deed being subsequently satisfied,' by the trustee selling the land, (to wit, in September, 1842, and after this suit brought) did
 
 *194
 
 not enlarge the plaintiff’s interest in the slave, which he obtained by the levy. The trusts in the deed to King being complicated, there was no resulting trust in A. J. L. of the slave, at the date of the levies upon which they could attach, under our act of 1812.
 

 Thirdly, the judge charged, that the plaintiff’s title to the slave was co-extensive only to that of the tenant for life, Mrs. Lanier; and as she had died before the trial, he was now entitled to recover, not the possession of the slave, but the value of the life estate, and damages for the'detention. If he had brought trover, or trespass, which he might have done, (Watson on Sher. 191,) the damages must have been only for the value of the life estate and interest; and if he had brought detinue, he could not have recovered the slave, as Mrs. La-nier died before the trial. The plaintiff had a verdict and judgment according to the charge of the judge, and we do not see any error in it.
 

 Per Curiam, Judgment affirmed.